**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

Mohamed Ali,

Plaintiff,

v.

Electrolux Home Products, Inc.,

Defendant.

Court File No.:

**COMPLAINT AND JURY DEMAND.**

---

Plaintiff for his Complaint states and alleges:

## PARTIES

1. Plaintiff Mohamed Ali is a United States citizen. He is of African birth and is Muslim.

2. Defendant Electrolux Home Products, Inc., is an appliance manufacturing company, located at 701 33rd Avenue North, Saint Cloud, Minnesota, 56303.

3. According to the Minnesota Secretary of State, Defendant's Registered Agent is C T Corporation System Inc, 100 S. 5th Street, #1075, Minneapolis, Minnesota, 55402.

## FACTS

4. Plaintiff worked for Defendant since April 2006 as a production line-employee.

5. Plaintiff was terminated on January 16, 2012.

6. In January 2010, Defendant issued a new policy which adversely affected Muslim

employees by changing the rules regarding food consumption by employees.

7. At this time, Plaintiff and 39 other Muslim employees expressed concern to Defendant that this policy change negatively impacted their observance of the Holy month of Ramadan.

8. The majority of Muslim employees at Defendant worked the second shift, which runs from 3:30 p.m., to midnight.

9. During the Holy month of Ramadan, Muslims fast from dawn to sunset.

10. These employees were requesting accommodation to be able break the religious fast during their work shift.

11. Defendant denied their request for religious accommodation.

12. An EEOC Charge of Discrimination against Defendant was brought on behalf of the Muslim employees, including the Plaintiff.

13. In August 2010, the Defendant entered into a Negotiated Settlement Agreement with the EEOC and the Muslim employees whereby, among other things, the Defendant agreed to adjust their break schedule to allow a 30 minute lunch break after sunset during the month of Ramadan, to accommodate those employees observing the religious fast.

14. As part of the Negotiated Settlement Agreement, Defendant also agreed not to retaliate against any employee requesting religious accommodation.

15. Just two days prior to the start of Ramadan in 2011, however, Defendant posted a notice stating that the lunch break accommodation was reduced to 20 minutes, falsely claiming to the EEOC that the employees agreed to that modification of the Negotiated Settlement Agreement.

16. Because the Defendant was not complying with the Negotiated Settlement Agreement, Plaintiff and some other Muslim employees filed another charge of discrimination with the EEOC.

17. Shortly thereafter, on September 13, 2011, Defendant's Supervisor Fleming threatened and attempted to force the Muslim union stewards, including the Plaintiff, to get the Muslim workers to sign a document which would relinquish their rights under the Negotiated Settlement Agreement.

18. Days later, when Defendant's Supervisor Fleming requested the signed papers from the Plaintiff, Plaintiff informed him that he was not going to force the other Muslim employees to sign a document giving up their rights.

19. Defendant's Supervisor Fleming was angry and threatening towards Plaintiff.

20. Shortly thereafter, on October 5, 2011, Plaintiff's supervisor intentionally re-started the production line in contravention of normal safety procedures, after the Plaintiff had stopped it to make a change-over. Plaintiff's supervisor continued to run the line despite observing that the Plaintiff was caught in the machinery and despite Plaintiff's screams and pleas for help. As a result, Plaintiff was injured and his ankle broken.

21. The Plaintiff was left with his foot caught in the machinery for over 15 minutes, until his co-workers turned off the machine and pulled him free. This supervisor did not allow the Plaintiff any medical attention and treated him in a hostile manner.

22. As a result of his injuries, Plaintiff was required to take time off.

23. Plaintiff was scheduled to return to work on January 16, 2012. On January 13, 2012, Plaintiff went to Defendant's Human Resources to have a new security badge made, because Defendant's badging system had been changed during his medical leave.

24. Defendant's Supervisor Fleming immediately interceded and called Plaintiff into a room filled with other persons, and fired the Plaintiff. When Plaintiff tried to ask questions, Defendant's Supervisor Fleming told him to "shut up!"

25. Numerous other Muslim employees have also been discriminated against and retaliated against by Defendant.

26. Plaintiff was a good worker and there was no legitimate, non-discriminatory reason for his termination, nor hostile treatment.

## COUNT ONE
## REPRISAL AND AIDING AND ABETTING REPRISAL AND HOSTILE WORK ENVIRONMENT

Plaintiff realleges each and every paragraph of this Complaint.

27. Defendant and employees and/or agents of Defendant engaged in a course of retaliation and reprisal against Plaintiff because of Plaintiff's refusal to go along with discriminatory and harassing behavior and because of Plaintiff's complaints of such in violation of Minnesota Statute § 363A, et seq., and 42 U.S.C. § 2000(e), et seq.

28. This included adverse treatment with respect to work-related privileges, injury,

termination, as well as hostile and adverse treatment by Defendant and others.

29. Defendant aided and abetted and was aided and abetted by others in the discriminatory and harassing conduct during the course of Plaintiff's employment in violation of Minnesota Statute § 363A, et seq., and 42 U.S.C. § 2000(e), et seq.

30. As a direct result of Defendant and its employees and/or agents' actions, Plaintiff has suffered and continues to suffer emotional distress and anguish, personal injury, physical injury, past, present and future loss of wages, compensation and other economic opportunities and benefits, actual damages, compensatory damages, consequential damages, special damages, loss of personal and professional reputation, loss of career opportunities and other damages.

**COUNT TWO**
**RACE, NATIONAL ORIGIN AND RELIGIOUS HARASSMENT AND DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**

Plaintiff realleges each and every paragraph of this Complaint.

31. The conduct of Defendant during the course of Plaintiff's employment and in terminating him constitutes discrimination in employment on the basis of race, national origin and religion and by creating a hostile work environment, in violation of Minn. Stat. § 363A, et. seq., and 42 U.S.C. § 2000(e), et seq.

32. Plaintiff has obtained a "Right to Sue" letter from the EEOC.

33. This action is timely commenced pursuant to Minn. Stat. § 363A., et seq., and 42 U.S.C. § 2000(e), et seq.

34. Plaintiff was differentially treated by Defendant because of his race, national origin and religion.

35. The harassing conduct of Defendant toward Plaintiff and the failure of supervisors to respond to the situation appropriately altered the terms and conditions of his employment, substantially interfered with his employment and created an intimidating, hostile and offensive working environment for Plaintiff.

36. Defendant maintained a system of employment which adversely affected Muslim and/or African-Americans.

37. Defendant has a pattern and practice of these behaviors.

38. Defendant also aided and abetted and were aided and abetted by others in the discriminatory conduct.

39. Defendant's actions and inactions constituted a continuing violation of Minn. Stat. § 363A., et seq., and 42 U.S.C. § 2000(e), et seq.

40. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer humiliation, embarrassment, mental and emotional distress and damage to reputation as well as loss of income and benefits, past and future.

**COUNT THREE**
**DISABILITY DISCRIMINATION AND AIDING AND ABETTING DISABILITY DISCRIMINATION IN EMPLOYMENT**

Plaintiff realleges each and every paragraph of this Complaint.

41. Defendant discriminated against Plaintiff and was aided and abetted by others in

its discrimination against Plaintiff, with respect to hiring, tenure, terms, conditions, facilities, and privileges of employment, in violation of Minn. Stat. § 363.03A, et seq., and 42 U.S.C. §12101, et seq.

42. Plaintiff has a disability or a record of disability or is perceived as having a disability.

43. Plaintiff has a physical, sensory or mental impairment which materially/ substantially limits one or more major life activities; has a record of such an impairment; or is regarded as having such an impairment.

44. The conduct of Defendant during the course of Plaintiff's employment after it learned about his disability constitutes discrimination in employment on the basis of disability, in violation of Minn. Stat. § 363.03A, et seq., and 42 U.S.C. § 12101 et seq.

45. This action is timely commenced pursuant to Minn. Stat. § 363A, et seq., and 42 U.S.C. § 12101, et seq.

46. The conduct alleged constitutes a continuing violation.

47. The discriminatory conduct of Defendant and its agents and employees toward Plaintiff, and the failure of supervisors to respond to the problem, appropriately altered the terms and conditions of Plaintiff’s employment.

48. Management failed to take timely and appropriate action to remedy the discrimination of Plaintiff and, instead, treated and allowed others to treat Plaintiff

negatively because of his disability.

49. With reasonable accommodation, Plaintiff was able to adequately perform his job duties.

50. Defendant failed to reasonably accommodate Plaintiff.

51. Defendant's agents had supervisory authority over Plaintiff and, as such, they acted in the capacity of Plaintiff's employer.

52. Defendant was aided and abetted by others in the discriminatory conduct during the course of Plaintiff's employment, in violation of Minn. Stat. § 363.03A, et seq.

53. As a direct result of Defendant and its employees and/or agents' actions, Plaintiff has suffered and continues to suffer emotional distress and anguish, personal injury, physical injury, past, present and future loss of wages, compensation and other economic opportunities and benefits, actual damages, compensatory damages, consequential damages, special damages, loss of personal and professional reputation, loss of career opportunities and other damages.

**COUNT FOUR**
**WORKERS' COMPENSATION RETALIATION**
**IN VIOLATION OF MINN. STAT. § 176.82**

Plaintiff realleges each and every paragraph of this Complaint.

54. Plaintiff made a "First Report of Injury" on October 5, 2011, regarding his injuries and right ankle fracture.

55. Plaintiff was placed on restrictions.

56. Defendant had other work available for the Plaintiff to do.

57. Defendant harassed and treated Plaintiff adversely because of his workers' compensation claim.

58. Defendant did not meaningfully explore accommodating the Plaintiff's injury.

59. Defendant discharged Plaintiff for seeking workers' compensation benefits among other reasons. Defendant did so intentionally, in a effort to obstruct Plaintiff's efforts to obtain benefits and in retaliation for Plaintiff receiving and/or seeking benefits, in violation of Minn. Stat. § 176.82.

60. As a result of Defendant and/or employees or agents' actions and/or inactions, Plaintiff has suffered and continues to suffer emotional distress, personal injury, physical injury, past, present and future loss of wages, compensation and other economic opportunities and benefits, actual damages, compensatory damages, consequential damages, special damages, loss of reputation and other damages.

**COUNT FIVE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff realleges each and every paragraph of this Complaint.

61. The employment relationship between Plaintiff and Defendant requires a greater obligation to refrain from inflicting mental or emotional distress than would apply to a relationship between strangers.

62. Defendant had a duty to refrain from degrading behavior toward Plaintiff.

63. Defendant allowed Plaintiff to be trapped in machinery and refused to turn it off

while watching him and hearing him be injured, constitutes outrageous conduct, beyond the bounds of decency and intolerable in a civilized society.

64. Defendant breached its duty by its reckless disregard of Plaintiff's interests.

65. Defendant knew or should have known that emotional distress was certain or substantially certain to result from its conduct and failure to put a stop to the offensive behavior.

66. Plaintiff affirmatively reported to Defendant and its agents the objected to behaviors and the distress he was experiencing as a result of Defendant's actions.

67. Defendant persisted, unabated, in its behaviors and terminated the Plaintiff.

68. The actions of Defendant constitute outrageous conduct beyond the bounds of decency and are intolerable in a civilized society.

69. The extreme and outrageous nature of the conduct is heightened by the relationship between Defendant and Plaintiff and Defendant's power to damage Plaintiff's interest and Defendant's authority and ready ability to stop or prevent the harmful actions.

70. As a direct and proximate result of Defendant's and its agents and/or employees' outrageous conduct, Plaintiff has suffered and continues to suffer personal injury, emotional distress, mental aguish, depression, sleeplessness, humiliation, loss wages, loss reputation, pain and suffering and other serious injury.

**COUNT SIX**
**NEGLIGENCE**

Plaintiff realleges each and every paragraph of this Complaint.

71. Defendant had a special relationship with Plaintiff.

72. Defendant had a duty to not harm Plaintiff, to protect him from harm, and to warn him of harm.

73. Defendant's actions and inactions failed to fulfill these duties.

74. As a direct and proximate result of Defendant's breach of duty, Plaintiff has suffered harm.

75. Both the injury to Plaintiff and the damage that resulted therefrom, were reasonably foreseeable to Defendant.

76. Defendant had a duty of care to take reasonable steps in selecting, retaining, supervising and training its management, employees and workforce to ensure that the premises were reasonably safe.

77. Defendant had the responsibility to reasonably oversee and maintain order at its workplace.

78. Defendant also had a duty to respond to complaints and investigate allegations of wrongdoing by its agents, owners, staff or work force.

79. Defendant should have taken reasonable steps to make sure that its employees and managers were not a danger to customers, business invites, contractees or employees and would not engage in inappropriate behavior.

80. Defendant did not take the necessary steps to make sure that the premises were safe for its customers, business invitees, business associates, contractees and employees, including Plaintiff.

81. Defendant breached its duty of care to Plaintiff when it failed to adequately supervise, train and discipline its managers and employees.

82. Defendant had a duty, before placing agents, managers or employees in a position of authority and control over others, to investigate their backgrounds.

83. Defendant had a duty to remove from its employment and not continue to give supervisory authority to persons it knew or should have known constituted a hazard to others.

84. Defendant failed to adequately do this.

85. As a direct and proximate result of Defendant's negligent supervision, hiring, retention, discipline and training, Plaintiff was subjected to harassment, verbal abuse and humiliation.

86. As a result of Defendant's negligence Plaintiff has suffered and continues to suffer personal and physical injury and pain, emotional distress, mental aguish, depression, humiliation, embarrassment, pain and suffering, loss of reputation, loss of wages and benefits and other serious injuries.

**COUNT SEVEN**
**INTENTIONAL INTERFERENCE WITH AN ECONOMIC ADVANTAGE**

Plaintiff realleges each and every paragraph of the Complaint.

87. Defendant and its agents and representatives were aware Plaintiff was an employee of Defendant, which paid his wages and guaranteed him a discrimination and retaliation-free workplace, as well as other compensation, terms and conditions of employment.

88. Defendant and its agents and representatives was also aware that it was a violation of Defendant's rules and/or Defendant's contractual agreement with Plaintiff to retaliate against the Plaintiff.

89. Despite their knowledge of those facts, agents and representatives of Defendant intentionally interfered with Plaintiff's business relationship and acted in bad faith toward Plaintiff.

90. As a result of Defendant's actions, obligations to Plaintiff were not honored and Plaintiff's economic relationship with Defendant was disrupted and severed.

91. As a direct and proximate result of Defendant and its agents and employees' conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation and embarrassment, physical pain and suffering, lost job opportunities, wages and benefits and other serious damages.

**WHEREFORE,** Plaintiff prays for judgment as set forth below and for the following relief:

1. Against Defendant for Counts One, Two and Three, for three times actual

damages, compensatory damages, consequential damages, special damages, damages for loss of compensation and/or damages for mental anguish, personal injury or suffering in a reasonable amount in excess of $100,000.00.

2. Against Defendant for Counts Four, Five Six and Seven, for actual damages, compensatory damages, consequential damages, special damages, damages for loss of compensation and/or damages for mental anguish, personal injury or suffering in a reasonable amount in excess of $100,000.00.

3. Against Defendant for any and all Counts, where appropriate, any enhancers and/or multipliers to damages.

6. For equitable and/or injunctive relief protecting Plaintiff and others from any further harm and removing or preventing dangerous conditions or situations from occurring.

7. For all attorneys' fees and costs.

8. For three times all lost wages and compensatory damages.

9. Plaintiff hereby gives notice of intent to seek leave to amend the Complaint to add punitive damages.

10. And for such other and further relief as the Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL JURY COUNTS AND AN ADVISORY JURY ON THE OTHER COUNTS.**

THE COOPER LAW FIRM, CHARTERED

Dated: November 7, 2012

By: s/Stephen W. Cooper

Stephen W. Cooper, Lic. 18788
Stacey R. Everson, Lic. 219277
Attorneys for Plaintiff
Loring Green East
1201 Yale Place, Suite A100
Minneapolis, MN 55403
(612) 338-3533

Acknowledgment of Minn. Stat. § 549.211

It is hereby acknowledged that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party.

s/Stephen W. Cooper
Stephen W. Cooper